STEVEN G. KALAR
Federal Public Defender
Northern District of California
CANDIS MITCHELL
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Candis_Mitchell@fd.org

Counsel for Defendant Pitts

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**United States of America**,

Plaintiff,

v.

**Carl Pitts,**

Defendant.

Case No.: CR 2017–412 VC

**Defendant's Sentencing Memorandum**

Court: Courtroom 4, 17th Floor
Hearing Date: December 11, 2018
Hearing Time: 10:30 a.m.

## INTRODUCTION

Defendant Carl Pitts was charged in an indictment with a violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B)(viii)—Conspiracy to Distribute and Possession with Intent to Distribute Methamphetamine and a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii)—Distribution and Possession with Intent to Distribute Methamphetamine. On September 18, 2018, Mr. Pitts pleaded guilty to violating Court Four, Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii)—Distribution and Possession with Intent to Distribute Methamphetamine. Mr. Pitts' guilty plea was pursuant to a written plea agreement to under Federal Rule of Criminal Procedure 11(c)(1)(C). The plea agreement stipulates that the government and Mr. Pitts will recommend a sentence of 96 months.

This sentence is sufficient, but not greater than necessary, to comply with the factors specified in 18 U.S.C. § 3553(a), due to Mr. Pitts':

1. Childhood and family history;
2. Pervasive substance abuse problems;
3. Current family ties.

## SECTION 3553(A) FACTORS

### I. The nature and circumstances of the offense and the history and characteristics of the defendant;

In late 2016, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") performed a series of undercover operations designed to ferret out individuals involved in methamphetamine trafficking. As a result of this operation, a confidential informant made arrangements to purchase methamphetamine from Mr. Pitts' co-defendant, Carlita Fowler. Ms. Fowler made a series of sales of methamphetamine to undercover ATF agents. On two occasions, Mr. Pitts was seen driving the car that Ms. Fowler used to arrive and depart the faux narcotics operation.

On the second occasion, a traffic stop was performed on the car that Mr. Pitts was driving. Officers received permission from Mr. Pitts to perform a limited search of the car and Ms. Fowler was arrested due to an outstanding warrant. The search of Mr. Pitts' car revealed a scale with drug residue between the driver's seat and driver's side door. A search of Ms. Fowler revealed heroin in her purse and methamphetamine that she had hidden on her person. Mr. Pitts was released following the traffic

stop.

When Ms. Fowler was booked for processing at the San Mateo County Jail officers discovered 9.8 grams of cocaine base, 14.4 grams of heroin, 3.9 grams of cocaine, and 61.5 grams of methamphetamine in her jacket lining. Denying ownership of the drugs within the jacket she was wearing, Ms. Fowler informed the officers that Mr. Pitts had possessed the drugs and the jacket and asked her to take possession of both. He made his request because at the time of the traffic stop Mr. Pitts was serving a term of supervised release for a prior federal drug possession conviction. As a result of his conduct, Mr. Pitts received a 10-month sentence in 10cr338-SI for violation of his supervised release.

While it is inconceivable that Mr. Pitts might find himself within the federal court system yet again for another drug trafficking offense, it was apparent that the stress of being released and attempting to provide for his family contributed to his possessing drugs for sale again. As the eldest child, Mr. Pitts felt responsible for providing for his younger half-brothers—who were at times homeless and sleeping on the sofas of friends—and paying for the education of his daughters. While he was making some funds buying cars and then fixing them up for resale, it was not enough to cover his expenses. Especially when coupled with medical expenses incurred as a result of a car accident that gave him problems with his memory and will require future additional surgery.

Mr. Pitts has had a difficult childhood, continues to suffer from substance abuse problems, but remains a critical part of his family and his children's lives. When taking these factors into consideration under §3553(a) in determining the proper sentence, a sentence of 96-months is more than adequate to serve all the purposes of sentencing.

Raised by his maternal grandparents, Philnoise Pitts and William Pitts, when his mother was unable to care for him, Mr. Pitts had a tumultuous upbringing. His mother, Helen Bradford, was active in raising Mr. Pitts before he was 11-years-old. However, after he entered the fifth grade, his mother began abusing drugs and going into and out of custody frequently. His stays with his grandparents became more extended the more his mother fell into her addiction and the less attention she paid to Mr. Pitts. Eventually, his grandparents adopted him in 1984.

Currently his mother resides at the Seton Medical Center in Daly City, California, as an in-

patient. She suffers from chronic breathing problems, among other medical issues, and is not able to speak. No longer able to walk and on a mechanical ventilator with a tracheostomy, Mr. Pitts' mother suffers from depression and anxiety. Despite their strained relationship when he was younger, Mr. Pitts was dutiful in visiting his mother when he was not in custody and their current relationship is much closer—helping greatly to elevate her mood.

Mr. Pitts preserved with his education, despite the loss of his grandfather—the only father figure in his life—and graduated from Archbishop Riordan High School in San Francisco in June 1990. Though he graduated, his academic performance was impacted by his own burgeoning substance abuse and domestic responsibilities. Mr. Pitts began raising his younger brother Robert when he was 16-years-old. He would be the responsible person who would be present for parent-teach conferences, despite being a few grades older. When Mr. Pitts got his first apartment, he took his younger brother in to live with him in an attempt to provide him with a stable residence.

All of the stresses of his unsteady childhood—coupled with his taking on the role of a parent—began to affect Mr. Pitts. By the age of 15, he had begun drinking alcohol, and by 17 he was using marijuana regularly. By the age of 23, Mr. Pitts' substance abuse had escalated to use of cocaine daily. In 2015, Mr. Pitts began using methamphetamine. Despite his use of illicit substances, he has always remained receptive to treatment programs. He has previously attended Narcotics Anonymous meetings and participated in the Reentry Program while he was on supervised release. Mr. Pitts attempted to be placed in the Bureau of Prisons drug treatment program after his first federal drug arrest, however he was not able to participate in the program before being released. He intends to continue taking advantage of any treatment programs offered while he is incarcerated.

A devoted father, Mr. Pitts has two daughters. One of his greatest regrets is that he was not present for much of their lives while they were growing up—repeating the same patterns that his own mother established with him when he was a child. Having experienced first-hand the trauma that comes from such separation, Mr. Pitts had been hopeful he would be able to silence his own demons and not fall into the same trap as his mother. He realizes his impending incarceration is his last chance to right the wrongs he made with his two older children with his youngest son, who is currently 3-years-old.

While he was out of custody, he was crucially involved in helping his wife find schooling to help on of his daughters address her mental disabilities and moving his family to a safer neighborhood. While he was out of custody, he would encourage his daughter to achieve both academically and socially. He would also encourage his daughters to take part in extra-curricular activies, and with his encouragement, his daughter ran and won a position as a class officer.

Mr. Pitts' wife and mother of his two oldest children, Yoshida Pitts, has been working as an in-home caretaker in San Francisco. The family presently intends to move to Texas to support Mr. Pitts while he is incarcerated.

## II. The need for the sentence imposed—

### A. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; To afford adequate deterrence to criminal conduct; To protect the public from further crimes of the defendant;

Mr. Pitts does not diminish the seriousness of his misconduct. Possession of drugs with the intent to distribute is undeniably is a grave offense warranting the significant punishment Mr. Pitts has and will receive. Mr. Pitts is acutely aware that he committed a real crime, with the possibility of real victims. But 96-months' imprisonment is sufficient.

The Court can look to the broader trajectory of Mr. Pitts' life to determine the least sentence sufficient to promote respect for the law. The criminal conduct in this case is one strand in a life that has attempted to contribute joy to the lives of the people around him. Respect for the law flourishes when it recognizes and encourages these other contributions, in addition to punishing the criminal conduct. *See Gall v. U.S.,* 552 U.S. 38, 54 (2007) ("a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."). Considering the good and the bad, counsel hopes the Court will conclude that 96-months' imprisonment strikes the right balance.

**B. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Mr. Pitts has had continuing difficulties stemming from the use of drugs such as heroin, marijuana, cocaine, and methamphetamine. However, demonstrating his ability to reform when he focuses his energies, Mr. Pitts tested positive for cocaine and marijuana only during his first month of supervision after his release from custody after his last conviction. After his initial positive tests, Mr. Pitts then tested negative for continued drug use. Despite is ability to focus himself away from substance abuse, Mr. Pitts would like to avail himself of any further treatment programs that the Bureau of Prisons would make available to him.

Additionally, Mr. Pitts intends to take advantage of vocational training provided by the Bureau of Prisons and is requesting placement at FCI Big Spring in Texas so that he can take advantage of the programs available there. While at FCI Big Spring he intends to take courses in Electrical Trades and Green Building Technologies.

**III. The kinds of sentences available;**

The Court has the authority to sentence Mr. Pitts up to a maximum of 40 years and a minimum of 5 years. The Court may impose a term of supervised release of four years to life. Mr. Pitts is ineligible for probation and faces a maximum fine of $5,000,000. There is a special assessment of $100.

**IV. The kinds of sentence and the sentencing range established**

Because of Mr. Pitts' prior convictions, there is a total offense level of 31 and a criminal history category of VI—as Mr. Pitts is a career offender. The resulting guideline range is 188 to 235 months.

**V. Any pertinent policy**

None.

**VI. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**

As the Court is aware, Mr. Pitts' guidelines recommend a range of 188 to 235 months. The parties are requesting a sentence of 96-months. On its face, this request would seem to produce a disparity among other defendants with similar records. However, research from the sentencing commission reveals that there is more leeway in the sentences imposed upon career offenders.

Over the last five years, the rate of within range sentences for career offenders has decreased from 29.6% in fiscal year 2013 to 21.7% in fiscal year 2017.[1] Additionally, as shown in the chart below, there is a range of sentences imposed for career offenders, despite all individuals being placed in criminal history category VI as a result of classification as a career offender.




Figure 1. Chart depicting the variety of lengths of sentences for career offenders.[2]

**VII. The need to provide restitution to any victims of the offense.**

No restitution is recommended by the parties.

OBJECTIONS TO PRESENTENCE REPORT

Mr. Pitts would object to the inclusion of proposed special condition seven, that he abstain from the use of all alcoholic beverages. Despite his addiction issues, Mr. Pitts has not had recent issues related to the abuse of alcohol and would request that the condition be modified to reflect that

[1] SOURCE: United States Sentencing Commission, 2013 through 2017 Datafiles, USSCFY13-USSCFY17.

[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Career_Offender_FY17.pdf

it should only be included should a drug abuse treatment professional make the recommendation.

## CONCLUSION

For the foregoing reasons, Mr. Pitts respectfully asks the Court to sentence him to 96-months' imprisonment, followed by four years supervised release. When the Court imposes sentence, Mr. Pitts hopes the Court will recommend that he be imprisoned at FCI Big Spring in Texas and make a recommendation that he participate in drug treatment while in custody.

He makes his request in light of his **family ties and responsibilities** as Mr. Pitts is a father of three and has been responsible for the care of his younger siblings as well. With a three-year-old, Mr. Pitts is hoping to finally be the father for his son that he was unable to be for his daughters and stop the cycle of abuse and abandonment that his mother began.

Additionally Mr. Pitts had **a lack of youthful guidance** as he was raised primarily by his grandparents while his mother was in and out of custody when he was a child. The death of his grandfather when he was 13-years-old greatly traumatized Mr. Pitts because he lost his only father figure. His time was spent largely unsupervised when his mother was abusing drugs and left him bereft of a shaping hand to guide him while he was navigating the world and set him on his own course to his impending **drug and alcohol dependence.** His substance abuse started when he was in high school and has continued for most of his adult life. While Mr. Pitts has successfully demonstrated his ability to remain drug free with concentrated effort, the pervasive substance abuse of his younger years greatly impacted his criminal history and lead him to receive the convictions that today make him a career offender.

Dated: December 4, 2018

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S

CANDIS MITCHELL
Assistant Federal Public Defender